THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

PAUL HEISNER.

*Opinion filed October 24, 1901.*

1. APPEALS AND ERRORS—*Supreme Court does not consider weight of evidence in reviewing action on peremptory instruction.* In reviewing the action of the trial court in refusing to instruct the jury to find for the defendant the Supreme Court does not weigh the evidence, but only determines whether the evidence, together with all inferences properly drawn therefrom, fairly tends to prove the plaintiff's cause of action.

2. SAME—*when refusal to direct a verdict for the defendant is justified.* A refusal to direct a verdict for the defendant in an action against a railroad company for damage to the plaintiff's land from overflow of water in a ditch constructed by the company on its right of way, is justified under evidence that the plaintiff did not consent to the construction of the ditch, and that his acts in connecting his own ditches therewith and in assisting in deepening the ditch were only such as he deemed necessary to mitigate the damage to his property, where the parties have proceeded upon the theory that it was a question of fact whether the act of 1889, respecting ditches constructed by mutual consent, applied to the ditch in controversy.

*Illinois Central Railroad Co.* v. *Heisner,* 93 Ill. App. 469, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

C. C. & L. F. STRAWN, and ANTOINETTE FUNK, (JOHN G. DRENNAN, and J. M. DICKINSON, of counsel,) for appellant.

N. J. PILLSBURY, and R. S. MCILDUFF, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The action below was case, by the appellee, against the appellant company. In substance, the declaration alleged the appellant company constructed a ditch along the south side of its road-bed, running through sections

19, 20 and 21, township 28, north, range 5, east of the third principal meridian, in Livingston county, in such manner as to divert the natural flow of the water and cause appellee's land to be overflowed and his crops damaged and injured. The cause was tried before a jury, the result being a verdict and judgment against appellant in the sum of $400. The Appellate Court for the Second District affirmed the judgment and granted a certificate of importance. This is a further appeal prosecuted to this court.

At the close of the evidence on the hearing in the trial court the appellant company moved the court to direct that a verdict be returned in its favor. The motion specified various grounds therefor, the third ground being as follows: "The evidence shows the ditch in question to have been constructed by mutual license, consent or agreement between the plaintiff and defendant, and perhaps others, within the meaning of the act of the General Assembly of the State of Illinois approved June 4, 1889, in force July 1, 1889, entitled 'An act declaring legal drains heretofore or hereafter constructed by mutual license, consent or agreement by adjacent or adjoining owners of land, and to limit the time within which such license or agreement heretofore granted may be withdrawn.'"

The contention in this court is, the trial court should have declared, as matter of law, that it appeared from the evidence the ditch on the said right of way of the appellant company was a drain constructed and connected by parol consent for the mutual benefit of all the lands interested therein, including the lands of the appellee, and that such parol consents had become irrevocable under the said act of 1889, and the easement created become perpetual, and the appellee, being one of the parties jointly interested in maintaining the ditch, was barred and estopped from complaining that the ditch inflicted injury upon him.

If the act of 1889 is applicable to a ditch constructed by a railroad company for the purpose of draining its road-bed and right of way, into which the proprietors of adjoining farming lands construct ditches for the purpose of conveying from their farms and fields the water into the railroad ditch, it is a question of fact whether the ditch of the railroad company has become a mutual ditch or drain, within the meaning of the said act. The litigants, respectively, proceeded on the trial of the cause upon the theory it was a question of fact whether said act of 1889 was applicable to the ditch in question, and procured the court to instruct the jury to determine that question as a question of fact. Under a familiar rule, the attitude of the parties remains the same in this as in the trial court, and the controversy between them is to be determined on the theory which they adopted and proceeded upon in the trial court. It must, however, be understood we express no opinion upon the question whether the enactment in question is applicable to the situation of the parties and their properties, respectively.

Speaking as to the duty and power of the trial judge when acting on a motion to direct a verdict, in the case of *Illinois Central Railroad Co.* v. *Harris*, 184 Ill. 57, we said: "In requesting the court to instruct the jury to find for the defendant, the truth of plaintiff's evidence, and all inferences to be properly drawn therefrom, were admitted, and in passing upon an application to take a case from the jury we do not consider or pass upon the weight of the evidence. (*Offutt* v. *World's Columbian Exposition*, 175 Ill. 472.) In such case the real question is whether the evidence, with all inferences to be properly drawn therefrom, fairly tended to prove plaintiff's cause of action as set out in his declaration. If it does, then it is the duty of the court to refuse to take the case from the jury."

It appeared in the proofs that the appellee had placed a number of lines of tile drain in his lands to convey the

water from his farming lands to the ditch constructed by
the appellant company along the road-bed on the right
of way, and that appellee used as an outlet for his tile
drains the ditch of the appellant company, and also that
he had, with his employees and his teams, on one occa-
sion assisted in deepening and enlarging the ditch of
the appellant company, and that he also at one time ex-
pressed his satisfaction with the manner in which the ap-
pellant company had broadened and deepened the ditch.
It was on this proof, in the main, the contention was and
is based that the railroad ditch had become a mutual
ditch, within the meaning of the said act of 1889. But
there was evidence produced on behalf of appellee tend-
ing to establish that he had not consented or agreed that
the ditch of the appellant company should be adopted
as a "mutual" ditch; that his acts and doings with rela-
tion thereto and in connection therewith were only such
as he, as a prudent and careful farmer, deemed neces-
sary to take from time to time in order to avoid injury
to his premises and the crops growing thereon, or to miti-
gate, as far as possible, damage and injury to his prop-
erty. There is abundant proof in the record to the effect
that the appellee frequently complained to the agents
of the appellant company that the effect of the ditch
was injurious to him and his property; that it flooded his
lands with water which, in the course of nature, would
not have flowed thereon, and obstructed the natural flow
of the water from portions of his land, and that he at
one time proffered to the section boss of the appellant
company that he would furnish men and teams and en-
large and deepen the ditch in order to avoid further flood-
ing of his lands if the company would permit him to
do so; that the section boss referred the matter to the
roadmaster, and that the permission was refused on the
ground the road-bed or grade of the railroad might be
washed out or injured by such work. The evidence fur-
ther tended to show that one Butler, the roadmaster for

the appellant, said "if the farmers (appellee and others) would help to deepen the railroad ditch the company would help," and that the appellee and other farmers whose lands were similarly situated to his, sent hands and teams and aided in deepening and broadening the ditch, under the direction and control of the section boss of the company; that the work and labor of said hands and teams were regarded by the appellee as a donation on his part, voluntarily made by him—not because he was under any obligation, mutual or individual, to do so, but because he was willing to make that sacrifice in order to avoid other and greater injury which he feared would result if the work was not done; that the work then done did not avail to sufficiently deepen and enlarge the ditch, and that appellee frequently thereafter complained to the agents of the appellant that the ditch was yet too small or too shallow, and that he finally instituted an action at law against the company, prior to the present action, for damages for injury to a portion of his lands, caused by the construction of the ditch of the company; that he recovered a judgment for damages caused by the flooding of his lands by reason of the ditch of the company, and such judgment was affirmed by the Appellate Court; that after said prior action had been finally determined in favor of the appellee, the appellant company cleaned out, deepened and enlarged the ditch, and that appellee was greatly pleased by such action on the part of the appellant company and expressed his approval of the same. The evidence, however, further tended to show appellee's lands were afterward flooded by reason that the ditch lacked capacity to carry the water which came into it; that one Kelly, with the acquiescence of the appellant company, connected a line of tile drains with the ditch of the appellant company, whereby the water from a large area, situated one-half of a mile away from the right of way, was brought to and emptied into this railroad ditch, which, the appellee

contended, aided to overtax the capacity of the appellant's ditch.

We are unable to say, upon consideration of the proof, that the trial court erred in overruling the motion to direct a peremptory verdict.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*